UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMISSIONING AGENTS, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00062-TWP-DKL |
| ) | |
| ROBERT G. LONG, ) | |
| HUGH GENERAL MANAGEMENT, LLC, ) | |
| doing business as HIGHGM, doing business as ) | |
| HUGHCX, LLC, doing business as ) | |
| HUGHGM, doing business as HUGH ) | |
| GENERAL MANAGEMENT, ) | |
| MISSION CRITICAL COMMISSIONING, ) | |
| LLC, doing business as HUGHGM, doing ) | |
| business as HUGHCX, doing business as ) | |
| HUGH GENERAL MANAGEMENT, ) | |
| Defendants. | |

**ENTRY DENYING MOTION TO CHANGE VENUE AND LIFTING STAY**

This matter is before the Court on Defendants, Robert G. Long's ("Mr. Long") and Mission Critical Commissioning LLC's Motion for Transfer of Venue, pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the Court denies the Defendants' Motion for Transfer (Filing No. 58).

## I. BACKGROUND

The facts of this case are set forth in detail in the Court's October 29, 2015 Entry on Defendants' Motion to Dismiss (Filing No. 56), and are, therefore, only summarized in this Order. Plaintiff, Commissioning Agents, Inc. ("CAI") is a business that provides commissioning services, which include consulting, engineering, and design services to ensure that a building is constructed to fit its intended purpose and operates accordingly. In this lawsuit, CAI brings an array of claims against the Defendants, including: breach of contract and breach of fiduciary duties, actual and

constructive fraud, tortious interference with business relationship, tortious and criminal conversion, theft and receiving stolen property, unjust enrichment, misappropriation of trade secrets, violations of the federal Racketeer Influenced and Corrupt Organizations Act and Indiana's Corrupt Business Influence Act.

According to CAI, while employed for its business, Mr. Long lied to, defrauded, and stole from CAI for the benefit of himself and CAI's competitors. Specifically, CAI alleges that Mr. Long stole proprietary information and used it on behalf of a competitor, HughGM, worked simultaneously for HughGM without CAI's knowledge, and used CAI's proprietary information to steal CAI's business for HughGM's benefit. CAI further alleges that HughGM was aware of Mr. Long's double-dealing and either actively encouraged it or deliberately turned a blind-eye to it. Finally, CAI also alleges that Mr. Long falsified timesheets and expense reports that he submitted to CAI, resulting in CAI paying Mr. Long unearned wages and unjustified reimbursements.

**A.     The Parties**

CAI is an Indiana corporation with its principal place of business in Indianapolis, Indiana and runs its accounting, human resources, marketing, administrative, data-management, and technology functions out of Indianapolis. In addition, its senior management, training facilities, and cloud-based information technology center are all located in Indianapolis.

Mr. Long is a resident of the state of Washington. Other than Mr. Long's three-day, training in Indianapolis, he has neither visited nor conducted business in Indiana. Mission Critical is a limited liability company, allegedly owned by Mr. Long, organized under the laws of Nevada, and primarily doing business in Washington. Mission Critical also has never conducted any business in Indiana.

HughGM and HughCx are both limited liability companies with their principal places of business in the state of Washington. The sole member of HughGM is George H. Amburn, Jr. ("Mr. Amburn"), a resident and citizen of Colorado, and the sole member of HughCx is HughGM, which is a citizen of Washington. Like CAI, HughGM is in the business of providing commissioning services for corporate clients.

**B.     Mr. Long works concurrently for CAI and HughGM**

On December 10, 2012, Mr. Long began his employment at CAI as a Commissioning Engineer, and was hired to effectuate growth and to service CAI's existing clients in the Pacific Northwest regions. He worked from his home office in Bellevue, Washington and at on-site client facilities located in Washington, California, and Ireland.

Mr. Long traveled to Indianapolis for his initial training, where he signed an employment agreement with CAI. By signing the agreement, Mr. Long explicitly acknowledged that CAI's proprietary information and materials belonged exclusively to CAI. He further promised to keep those materials confidential and not to use them for his own benefit or the benefit of others. Mr. Long personally returned the signed employment agreement to CAI's Human Resources department in Indianapolis.

Mr. Long states that, thereafter, he reported to Mr. Temple, who resided and was stationed in California. (Filing No. 46-1 at 3.) While acknowledging that he occasionally reported to Mr. Temple, CAI asserts that Mr. Long "was hired by, was fired by, was paid by, was evaluated by, submitted all work expenses to, and submitted all time reports to Indianapolis." (Filing No. 38 at 6; Filing No. 38-1 at 2-6.) At some point during his employment with CAI, Mr. Long also began working for HughGM.

3

### C. Mr. Long steals CAI's proprietary materials to benefit himself and HughGM

CAI alleges that, during his employment, Mr. Long accessed CAI's proprietary materials, which were created and maintained in Indiana, and funneled them to HughGM. According to CAI, upon accessing CAI's proprietary materials, Mr. Long delivered them to Mr. Amburn in order to steal business for HughGM. Mr. Long acquired these materials by pulling them off of CAI's databases, which are cloud-based systems managed at CAI's Indianapolis headquarters. CAI contends that these proprietary materials are essentially CAI's whole business, as they represent years of expertise and experience, toward which CAI has devoted significant resources.

CAI alleges that Mr. Long used its proprietary materials to learn about and to steal business opportunities from CAI. In addition, CAI alleges that Mr. Long regularly used CAI's proprietary materials in HughGM bids. Further, CAI alleges that Mr. Long pursued new client leads on behalf of HughGM, despite being paid by CAI to pursue such leads on CAI's behalf. Finally, CAI also alleges that Mr. Amburn knew that the materials he received from Mr. Long were stolen from CAI and used them to pursue HughGM business.

### D. Mr. Long falsifies CAI employment records

In addition to allegedly stealing proprietary materials and business from CAI on behalf of HughGM, CAI also alleges that Mr. Long lied on several employment forms, resulting in CAI paying Mr. Long unearned salary and travel expenses. For instance, CAI alleges that Mr. Long's employment application was rife with misrepresentations, including lies about his skills, experience, employment history, and criminal history. According to CAI, these alleged misrepresentations hid the fact that Mr. Long held positions with other commissioning firms and made Mr. Long appear qualified for the job when he was not.

In addition, CAI alleges that Mr. Long sent inaccurate time and expense reports to CAI's Indianapolis office. Specifically, according to CAI, Mr. Long sent over eighty fraudulent time reports and at least twenty-two fraudulent expense reports to CAI's Indianapolis headquarters, via an online program administered by CAI's Business Administrative Group. In doing so, Mr. Long induced CAI's business management staff in Indianapolis to pay him unearned wages and to reimburse him for unspent expense funds out of CAI's Indianapolis bank accounts.

## II. LEGAL STANDARD

28 U.S.C. § 1404(a) provides, in relevant part, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought". 28 U.S.C. § 1404(a). Transfer of venue is appropriate under § 1404(a) when the moving party establishes that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 1:14-CV-88-TWP, 2014 WL 3818289, at *2 (S.D. Ind. Aug. 4, 2014); *State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996).

## III. DISCUSSION

To begin, the Court is not persuaded by CAI's argument regarding the timeliness of the Defendants' motion to transfer and finds that argument to be lacking. On October 29, 2015, the undersigned specifically afforded the Defendants leave to refile their motion to transfer, at a later time, following this Court's ruling regarding personal jurisdiction. (*See* Filing No. 56 at 12.) On November 10, 2015, just twelve days after this Court's entry, the Defendants filed their renewed motion. (Filing No. 58.) Accordingly, the Court considers the Defendants' motion to be timely

filed. *See also Nalco Co. v. Envtl. Mgmt., Inc.*, 694 F. Supp. 2d 994, 997 (N.D. Ill. 2010) (allowing a defendant to re-file motion to transfer venue after previously withdrawing and reserving the right to re-file); *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 957 (M.D. Tenn. 2008) ("a motion to dismiss for improper venue pursuant to Rule 12(b) is not the same as a motion to transfer to a more convenient venue under 28 U.S.C. § 1404(a) and is therefore not subject to the waiver provisions of Rule 12(h)").

Moving to the merits of the Defendants' motion, the Court notes that neither party argues that venue is improper in either the Southern District of Indiana or in the Western District of Washington. Accordingly, this Court is left to determine whether this case should be transferred based on convenience. When deciding whether to transfer an action based on convenience, courts consider several factors, including the convenience of the parties; the convenience of the witnesses; the location of material events and material evidence; and the interests of justice. *Collins v. City of Seymour*, No. 1:13-CV-1838-TWP, 2014 WL 279865, at *2 (S.D. Ind. Jan. 24, 2014); *Brotherhood Mut. Ins. Co. v. GuideOne Mut. Ins. Co.*, No. 1:10-CV-462, 2011 WL 1627114, at *2 (N.D. Ind. Apr. 28, 2011). This analysis requires an individualized, case-by-case consideration of convenience and fairness. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *2; *Bussell*, 939 F. Supp. at 651.

The relative weight afforded to each factor is not specified in § 1404(a). *Bussell*, 939 F. Supp. at 651. Instead, courts have broad discretion when weighing the factors and deciding whether to grant or deny a motion to transfer under § 1404(a). *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) ("[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge"); *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *2. Nevertheless, courts

are to remain mindful of the purpose of § 1404(a) which is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *2; *Hunter v. Big Rock Transp., Inc.*, No. 1:07-CV-1062-SEB, 2008 WL 1957775, at *1 (S.D. Ind. May 2, 2008).

The party moving for transfer has the burden to establish, by reference to particular circumstances, that the transferee forum is *clearly* more convenient than the transferor forum. *Coffey*, 796 F.2d at 219-20 (emphasis added); *Overton & Sons Tool and Die Co. v. Precision Tool, Die & Machine Co.*, No. 1:13-CV-1302-TWP, 2014 WL 1669863, at *5 (S.D. Ind. Apr. 28, 2014). Further, transfer is not justified when doing so would merely shift the inconvenience of the litigation from one party to the other. *GT Performance Group, LLC v. Koyo USA, Corp.*, No. 4:12-CV-83-TWP, 2013 WL 4787329, at *4 (S.D. Ind. Sept. 6, 2013); *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2.

### A. Convenience of the Parties

First, the Court weighs the relative convenience of the parties in either district. *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, No. 1:10-CV-462, 2011 WL 1627114, at *2 (N.D. Ind. Apr. 28, 2011). At the outset, there is typically a strong presumption in favor of the plaintiff's choice of forum. *Overton & Sons Tool and Die Co.*, 2014 WL 1669863, at *5; *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-CV-20-TWP, 2012 WL 1712554, at *6 (S.D. Ind. May 15, 2012) (noting that overcoming the presumption is "a steep hill to climb"). In particular, when the forum is the plaintiff's home forum, the plaintiff's choice carries significant weight. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Volkswagen Aktiengesellschaft Inc. v. Dee Eng'g, Inc.*, No. 1:02-CV-1669-LJM, 2003 WL 1089515, at *2 (S.D. Ind. Mar. 4, 2003).

7

Nevertheless, the presumption is rebuttable. *Overton & Sons Tool and Die Co.*, 2014 WL 1669863, at *5. For instance, when the chosen forum is not the plaintiff's residence, the plaintiff's choice is entitled to less deference and the defendant's place of residence becomes more important in determining the convenience of the parties. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Bussell*, 939 F. Supp. at 651. Similarly, when the chosen forum has little connection to the relevant events, the plaintiff's choice of forum is entitled to less deference and becomes "simply one factor among many" to be considered. *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *3; *Dunlap*, 2012 WL 1712554, at *6.

In this case, CAI is incorporated and has its principal place of business in Indiana. In addition, although the Defendants contend that CAI's state of incorporation is the only connection to the forum state, this Court previously rejected that argument, concluding instead that Indiana has a significant connection to the relevant events. Specifically, the Court concluded as follows,

> The Court considers the alleged conduct by Mr. Long and HughGM in furtherance of Mr. Long's wrongful actions to be particularly aggressive. Mr. Long and HughGM had access to CAI's business leads and proprietary materials directly because of Mr. Long's employment with CAI, an Indiana company. Without a doubt, CAI never would have released such materials to Mr. Long, had he not signed and submitted his employment agreement which included confidentiality provisions, which Mr. Long submitted while in Indianapolis during his employee training. Further, Mr. Long's access to CAI's proprietary materials was exclusively through CAI's servers, which are exclusively managed from CAI's headquarters in Indianapolis.

> Given the nature of CAI's business, these actions are not insignificant. Importantly, CAI contends that its proprietary materials are "essentially CAI's whole business" and "represent years of expertise and experience, and represent CAI's significant commitment of resources (financial and otherwise) to the creation and development." Further, it is undisputed that commissioning clients usually do not advertise publicly when they have a need for commissioning services but, instead, announce their needs only to those firms with whom they have a prior relationship or with those firms that are known to have a strong reputation for quality work.

> As such, Mr. Long's seemingly minimal forum-state actions of logging on to a CAI server and downloading confidential proprietary information have a significant

>jurisdictional impact, as this singular act, which was facilitated by Mr. Long's employment with CAI, potentially stole "CAI's whole business." The Court does not agree with Defendants that this is mere hyperbole. CAI has presented evidence that Mr. Long and HughGM used the stolen proprietary information to steal significantly-valued contracts with Boeing, Microsoft, and other "Fortune 100 clients". If proven, the injury to CAI in Indiana is unquestionably substantial. Moreover, Mr. Long's contacts with CAI in Indiana, as CAI's employee, is precisely what made his alleged scheme of fraud possible. Accordingly, Mr. Long must be held to have purposefully directed his tortious activities at Indiana.

(Filing No. 56 at 25-26.) Thus, the Court affords CAI's choice of its home forum considerable deference.

In addition, when considering the convenience of the parties, courts also consider the parties' abilities to bear the expense of trial in a particular forum. *Dee Eng'g, Inc.*, 2003 WL 1089515, at *2-3 (holding that the larger of the two parties was in a better position to bear the cost of litigating outside of its home forum); *Bussell*, 939 F. Supp. at 651. In this case, neither party argues that it is in a weaker financial position and is, therefore, unable to bear the extra expense of travel. As a result, this Court will assume that both parties are capable of bearing any additional travel costs and this analysis favors neither party.

Given that Indiana is CAI's home forum, that there is a significant connection between the material events and Indiana, and that both parties have equal ability to bear the travel expenses of out-of-state litigation, the Court concludes that granting the Defendants' transfer motion would accomplish nothing more than impermissibly shifting the burden from one party to the other. *See GT Performance Group, LLC*, 2013 WL 4787329, at *4 (noting that transfer is not justified when doing so would merely shift the inconvenience of the litigation from one party to the other); *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2. As a result, this Court considers this factor to militate against transfer.

9

**B.     Convenience of the Witnesses**

Second, the Court weighs the relative convenience of the witnesses in either district. *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2. Often, the convenience of witnesses is considered the most important consideration in determining whether to transfer a case. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *4. *But see Abbot v. Lockheed Martin Corp.*, No. 6-CV-701-MJR, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007) ("[t]he convenience of the witnesses weighs heavily only to the extent that the witnesses may actually be unavailable for trial in one forum").

When addressing this factor, courts consider such factors as the number of witnesses located in the respective districts, travel distances and associated costs for those witnesses, the willingness of those witnesses to appear, whether unwilling witnesses are within the court's reach to compel appearance, and the nature and quality of the witnesses' testimony. *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *3; *Hunter*, 2008 WL 1957775, at *2.

**1.     Party Witnesses**

Both parties argue that resolution of this contract dispute will likely require witness testimony from their representatives. The Defendants note that most of their representatives are in Washington, while CAI notes that most of its representatives are in Indiana. Nevertheless, when weighing the relative convenience of witnesses, courts generally assign little weight to the location of employee-witnesses because they are usually within the control of the parties and are likely to appear voluntarily in either forum. *Abbot*, 2007 WL 844903, at *3. Consequently, because employee-witnesses are under the control of the parties, the Court finds neither forum to be clearly more convenient.

## 2. <u>Non-Party Witnesses</u>

The Defendants note several non-party witnesses, identified from exhibits attached to CAI's amended complaint, and assert that their existence requires transfer to the Western District of Washington. When weighing the relative convenience of witnesses, courts assign greater weight to the location of non-party witnesses because securing their testimony may require use of compulsory processes and because they are more likely to be inconvenienced by having to travel. *Dee Eng'g, Inc.*, 2003 WL 1089515, at *4 ("live testimony is favored over deposition testimony at trial"); *Kendall U.S.A., Inc. v. Cent. Printing Co., et al.*, 666 F. Supp. 1264, 1268 (N.D. Ind. 1987) (holding that transfer was appropriate because the transferee district could exercise compulsory process over non-party witnesses). Indeed, whenever possible, courts are encouraged to facilitate the "live" presence of material nonparty witnesses. *Kendall U.S.A., Inc.*, 666 F. Supp. at 1268. Additionally, if non-party witnesses are widely dispersed, courts often evaluate which district can better facilitate the transportation needs of the witnesses. *See, e.g.*, *Bruce Lee Enters., LLC v. Ecko.Complex, LLC*, No. 1:09-CV-398-WTL, 2010 WL 989909, at *2-3 (S.D. Ind. Mar. 16, 2010) (holding that the Southern District of New York had significant transportation advantages over the Southern District of Indiana, particularly in terms of daily flights to and from the forum).

Although the Defendants identified several non-party witnesses who live beyond the reach of this forum, Defendants fail to adequately assert what testimony these witnesses might provide, whether their testimony would be non-duplicative, and whether these witnesses would not be willing to travel to Indiana. In contrast, CAI contends that the testimony of these witnesses is not material to their claims against the Defendants and these witnesses may not be necessary, as there may be other means of obtaining the same information.

Without more, the Defendants have failed in their burden to establish that convenience clearly favors transfer to the Western District of Washington because of the existence of non-party witnesses outside the reach of this Court.  *See*, *e.g.*, *Villafuerte v. Decker Truck Line, Inc.*, No. 2:14-CV-177-TLS-PRC, 2014 WL 3721962, at *4 (N.D. Ind. July 25, 2014) ("[t]he determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list.  Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case") (internal quotation omitted); *Summit Grp. Holdings, LLC v. O'Donnell*, No. 1:06-CV-339 RL, 2007 WL 1549920, at *6 (N.D. Ind. May 25, 2007) (transfer denied because the movant was unable to show "what witness testimony will be elicited, the materiality of each witness's testimony, whether certain testimony will be cumulative, whether the witnesses reside in Indiana or [the transfer forum], whether the witnesses are willing to travel to Indiana, or the degree of inconvenience for each witness").

Consequently, because neither forum is clearly more convenient for the party and non-party witnesses, the Court concludes that this factor does not favor either party.

**C.**     **Location of Material Events and Evidence**

Third, the Court weighs the location of material events and material evidence.  *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2.  As already stated, Indiana has a substantial connection to the material events of this case.  However, given that Mr. Long lives and primarily conducted his business on the West Coast of the United States, Washington also bears a significant connection to the material events.

CAI acknowledges that most of the material evidence in this case is documentary or electronic in nature and notes that it is stored in both forums.  In such circumstances, courts frequently consider this factor to be neutral in the decision to transfer.  *See, e.g.*, *Bruce Lee Enters.,*

*LLC*, 2010 WL 989909, at *2, *4 (holding, in a case involving denial of coverage under an insurance contract, that the location of documentary evidence related to insurance coverage mattered less than the location of the underlying tort suits); *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 574 (N.D. Ohio 1998) (emphasizing that the location of documentary evidence was only "a minor consideration" and that the location of physical evidence was given more weight).

Given the relative ease in transferring documentary evidence electronically, courts often consider neither forum to be more convenient on this basis. *Abbot*, 2007 WL 844903, at *4 ("[i]t is likely that paper documents will be scanned for delivery irrespective of the situs of the case since that seems to be the trend in this digital age where jump drives the size of a cigarette lighter can hold multiple gigabytes of information and multi-page documents can be emailed around the world in seconds"); *Picker Int'l, Inc.*, 35 F. Supp. 2d at 574 ("[d]ocuments may be easily sent by mail, copied or even faxed to a remote location.").

Because the material events in this case are spread across both forums, and because the primary evidence in this case is documentary in nature, the Court concludes that this factor favors neither party.

### D.     Interests of Justice

Fourth, the Court weighs whether the interests of justice would be better served in either district. *Collins*, 2014 WL 279865, at *2; *Brotherhood Mut. Ins. Co.*, 2011 WL 1627114, at *2. The interest of justice is a separate element of the transfer analysis that relates to the efficient administration of the court system rather than the merits of the underlying dispute. *Coffey*, 796 F.2d at 220-21. The interest of justice analysis may be determinative in a particular case, even if

the convenience of the parties and witnesses might call for a different result. *Coffey*, 796 F.2d at 220; *Kendall U.S.A., Inc.*, 666 F. Supp. at 1268.

Factors considered in this analysis include, the likely speed to trial in each forum; each forum's familiarity with the relevant law; and the relationship of each forum to the controversy, particularly concerning whether jurors have a financial interest in the case, and whether jurors in one forum are better equipped to apply community standards. *Coffey*, 796 F.2d at 221 n.4; *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *5.

Neither party asserts that one district would result in a faster resolution of this case. This Court also concludes that there is little meaningful difference in the adjudicatory speed between the two districts. One method used for determining adjudicatory speed is comparing the median time between filing and disposition in either district. *See e.g.*, *RCA Trademark Mgmt. S.A.S.*, 2014 WL 3818289, at *5; *Bruce Lee Enters., LLC*, 2010 WL 989909, at *3. In this district, the average time from filing to disposition in civil cases is 9.0 months. National Judicial Caseload Profile (available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/12/31-2). By comparison, in the Western District of Washington, the average time from filing to disposition in civil cases is 6.5 months. *Id*.

The Court does not consider the two-and-a-half month difference to be significant enough to warrant transfer in this case. *Cf. Dee Eng'g, Inc.*, 2003 WL 1089515, at *5 (holding that a one month difference in median time to disposition was not statistically significant enough to favor one forum over another); *Grange Mut. Cas. Co. v. Hallmark Specialty Ins. Co.*, No. 1:14-cv-00823-TWP-DML, 2015 WL 5552660, at *8 (S.D. Ind. Sept. 16, 2015) (holding that a two month difference in median time to disposition was not statistically significant enough to favor one forum over another).

Additionally, the Defendants do not contest that this Court is unfamiliar with the relevant law, likely on account of the fact that both federal and Indiana law will apply in this case.

Because neither district is clearly more efficient in resolving this dispute, because the Court is capable of applying both federal and Indiana law, and because the Southern District of Indiana has a strong interest in resolving this dispute, the interests of justice factor tilts against transfer.

### IV. CONCLUSION

In conclusion, while the Southern District of Indiana may be less convenient for the Defendants, they have not met their burden to demonstrate that the Western District of Washington is *clearly* the more convenient forum. Instead, based on the arguments presented, the Court concludes that transferring this case would merely and impermissibly shift the inconvenience from the Defendants to CAI. Consequently, Defendants' Motion for Transfer of Venue under 28 U.S.C. §1404(a) (Filing No. 58.) is **DENIED**.

FURTHER, the stay issued on January 13, 2016 (Filing No. 77) is lifted. Parties are to meet and confer regarding new deadlines and contact the Magistrate Judge for approval of a case management plan.

**SO ORDERED.**

Date: 5/17/2016

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher J. Bayh
BARNES & THORNBURG LLP (Indianapolis)
cbayh@btlaw.com

T. Joseph Wendt
BARNES & THORNBURG LLP (Indianapolis)
jwendt@btlaw.com

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com

Michael Wesley McBride
COHEN & MALAD LLP
mmcbride@cohenandmalad.com

TaKeena Monette Thompson
COHEN & MALAD, LLP
tthompson@cohenandmalad.com

Charles R. Whybrew
LEWIS WAGNER LLP
cwhybrew@lewiswagner.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Lynsey Michelle David
LEWIS WAGNER LLP
ldavid@lewiswagner.com